IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK FITZHENRY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>CAREER EDUCATION CORPORATION and EDUTREK, LLC,<br><br>        Defendants. | NO. 1:14-cv-10172<br><br>**DEMAND FOR JURY TRIAL** |

**PLAINTIFF'S OPPOSITION TO MOTION OF DEFENDANT EDUTREK LLC TO STAY THIS ACTION PENDING THE DECISION OF TWO SUPREME COURT CASES, OR, IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT FOR LACK OF STANDING FOR FAILURE TO STATE A CLAIM FOR RELIEF**

**INTRODUCTION**

Plaintiff Mark Fitzhenry ("Plaintiff") respectfully submits this memorandum in opposition to the Motion of Defendant EduTrek, LLC to Stay the Proceedings in this Action Pending the Decision of Two Supreme Court Cases or, in the Alternative, to Dismiss Plaintiff's Second Amended Complaint for Lack of Standing and Failure to State a Claim for Relief (Dkt. 76).

EduTrek's Motion should be denied because it entirely fails to recognize that in *Chapman, et al. v. First Index, Inc.*, 796 F.3d 783 (7th Cir. Aug. 6, 2015) the Seventh Circuit emphatically rejected the notion that an individual offer of judgment could moot a class plaintiff's claims, and further specifically instructed district courts in the Seventh Circuit <u>not</u> to

wait for the Supreme Court's decision in *Gomez v. Campbell-Ewald*, 768 F.3d 871 (9th Cir. 2014) *cert. granted*, 135 S. Ct. 2311 (2015).

EduTrek's alternative reliance on *Spokeo* as a purported basis for a stay fares no better, as *Spokeo* implicates the Fair Credit Reporting Act ("FCRA"), which is simply a different kind of statute than the TCPA, as concrete harm arguably cannot be inferred from violation of the FRCA. In enacting the TCPA, Congress recognized that recipients suffer a nuisance and unwanted invasion of privacy—all of which constitute "injury in fact" for Article III purposes—a fact recognized by the Seventh Circuit in *Chapman v. Wagener Equities, Inc.*, 747 F.3d 489, 491 (7th Cir. 2014). Accordingly, even if the FRCA Plaintiff in *Spokeo* is found not to have suffered a "injury in fact" it will in no way support a finding that a TCPA plaintiff such as Mark Fitzhenry has not been harmed sufficiently to support this Court's exercise of Article III jurisdiction over this case. Lastly, EduTrek's motion wholly fails to credit the specific allegations in Plaintiff's Complaint that Plaintiff was harmed by the calls, and accordingly fails on this ground as well.

## ARGUMENT

**I. THE SEVENTH CIRCUIT HAS DECISIVELY REJECTED EDUTREK'S ASSERTION THAT PLAINTIFF'S CLAIMS HAVE BEEN RENDERED MOOT AND THAT THE PENDENCY OF *CAMPBELL-EWALD* SUPPORTS A STAY OF THIS ACTION**

That EduTrek failed to even cite the Seventh Circuit's decision in *Chapman, et al. v. First Index, Inc.*, 796 F.3d 783 (7th Cir. Aug. 6, 2015), a decision rendered two months before EduTrek filed its motion, speaks volumes about the weakness of EduTrek's position, as *Chapman v. First Index* could not be more squarely against EduTrek's position. Simply put, the Seventh Circuit overturned its decision in *Damasco v. Clearwire Corp.,* 662 F.3d 891 (7th Cir.

2011), which allowed for mooting of class actions through an individual offer of judgment if no motion for class certification was then pending:

> We overrule *Damasco, Thorogood*, *Rand*, and similar decisions to the extent they hold that a defendant's offer of full compensation moots the litigation or otherwise ends the Article III case or controversy. As *Circuit Rule 40(e)* requires, this opinion has been circulated to all judges in active service. None favored a hearing en banc.

*Chapman, et al. v. First Index, Inc.*, 796 F.3d at 787.

Moreover, the Seventh Circuit was emphatic that courts in the Seventh Circuit are not to wait for the Supreme Court to rule in *Gomez v. Campbell-Ewald* as EduTrek asks the Court to do here, holding: "This issue [offer of judgment mooting] is before the Supreme Court *Gomez*, and we think it best to clean up the law of this circuit promptly, rather than require Chapman and others in his position to wait for another year for the Supreme Court's decision." *Chapman, et al. v. First Index, Inc.*, 796 F.3d at 786. Accordingly, under *Chapman v. First Index*, EduTrek's request for a stay as well as dismissal must be rejected.

## II. CONTRARY TO EDUTREK'S POSITION A RULING ADVERSE TO THE FRCA PLAINTIFF IN *SPOKEO* WOULD NOT IMPACT PLAINTIFF'S TCPA CLAIM

*Spokeo* involves a claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, against an internet company that publishes personal information (including financial data) about individuals without their consent. *Robins v. Spokeo, Inc.,* 742 F.3d 409, 410 (9th Cir. 2014). Defendant Spokeo argued that (1) the plaintiff did not have Article III standing because he did not allege any harm stemming from the publication of the information and (2) Congress cannot create such standing by providing a statutory remedy in the absence of a showing of actual harm. The Ninth Circuit disagreed. *See id.* at 412 ("Spokeo contends, however, that Robins cannot sue under the FCRA without showing actual harm. But the statutory

cause of action does not require a showing of actual harm when a plaintiff sues for willful violations.") Thus, *Spokeo* deals with plaintiffs who, by definition, arguably have no concrete harm, but nonetheless have a valid damage remedy as a result of the statute.

*Spokeo* does not govern here because the TCPA is a different kind of statute than the FCRA. In its factual findings, Congress made clear that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy and, when an emergency or medical assistance telephone line is seized, a risk to public safety" (Pub. L. No. 102-243, 105 Stat. 2394, Section 2(5) (1991)), and "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy." *Id*. at Section 2(13). "Invasion of privacy" and "nuisance" are concrete harms as seen by the fact that the common law of torts provides remedies under these scenarios. The TCPA simply provides liquidated statutory damages for these pre-existent harms. But that is not the same thing as providing a statutory remedy in the absence of a pre-existent harm, which is what the *Spokeo* petitioners allege the FCRA does.

Several courts, including the Seventh Circuit, have held that TCPA violations represent concrete injuries to those who receive the unwanted communications. *See Chapman v. Wagener Equities, Inc.*, 747 F.3d 489, 491 (7th Cir. 2014). ("no monetary loss need to be shown to entitle the [ ] recipient to statutory damages [under the TCPA] ... [,] for such damages not only serve to compensate for injuries difficult to estimate in dollar terms, but also, like statutory compensation for whistleblowers, operate as bounties, increasing the incentives for private enforcement of law."); *Palm Beach Gold Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1253 (11th Cir. 2015) ("Because Palm Beach Golf has suffered a cognizable, particularized, and personal injury, it has Article III standing."); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc*., 401 F.3d 876, 881 (8th Cir. 2005) ("These harms [stemming from TCPA

violations], while small in reference to individual violations of Act, nevertheless represent compensable harms encompassed by a liquidated sum within the fixed amount."). *See also Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 633 (6th Cir. 2015) (citing, e.g., *Palm Beach*); *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Even a recipient who gets the fax on a computer and deletes it without printing suffers some loss: the value of the time necessary to realize that the inbox has been cluttered by junk."); *Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814, 819 (8th Cir. 2012) ("We conclude that the ordinary meaning of the term 'right of privacy' easily includes violations of the type of privacy interest protected by the TCPA. Our court has previously stated that violations of the TCPA are 'invasions of privacy' under [the] ordinary, lay meaning[ ] of the[ ] phrase [ ].") (quoting *Universal Underwriters*); *Smith v. Microsoft Corp.*, No. 11-CV-1958, 2012 WL 2975712, at *6 (S.D. Cal. July 20, 2012) ("Accordingly, based on the plain language of the TCPA and supported by the legislative history as set forth above, the Court finds that by alleging he received a text message in violation of the TCPA, Smith has established a particularized injury in satisfaction of Article III premised on the invasion of his privacy, even absent any economic harm.")

Mr. Fitzhenry alleges he received calls that violated the TCPA. Thus, by definition, he has alleged a concrete harm as embodied in the statute. Furthermore, Mr. Fitzhenry specifically alleged in his Second Amended Complaint that he suffered a concrete harm. *See, e.g., Second Amended Complaint*, Dkt. 65 ¶ 64 ("Plaintiff and the class have been damaged by the calls by or on behalf of defendants. Their privacy has been improperly invaded, minutes were used from cell phone plans and they were forced to attend to these improper calls. Defendants intended this: the very nature of telemarketing through use of automated dialers improperly shifts the burdens associated with marketing to the consumer."). *Spokeo* therefore will have no impact on

the adjudication of this case, and a stay pending its resolution would serve no purpose, and certainly does not amount to a showing sufficient to meet its high burden in obtaining a stay of this action. *Landis v. North Am. Co.*, 299 U.S. 248 (1936) affirmed that "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id*. at 255. Plaintiff adds that in no event could *Spokeo* support a finding that Plaintiff failed to state a claim upon which relief could be granted—*Spokeo* is a jurisdictional challenge to the power of the federal courts to adjudicate a claim without an injury in fact, not for failure to state a claim.

### III. DEFENDANT CANNOT MEET ITS HIGH BURDEN FOR SECURING A STAY, NOR SHOULD PLAINTIFF BE EXPOSED TO THE SERIOUS RISK OF CALL RECORDS BEING DESTROYED WHILE THE STAY IS PENDING

Given that EduTrek's reliance on the pendency of *Campbell-Ewald* has been rejected by the Seventh Circuit, and because *Spokeo* cannot impact this action, EduTrek cannot meet its high burden in obtaining a stay of this action. *Landis v. North Am. Co.*, 299 U.S. 248 (1936) is the seminal case to consider when courts review motions to stay. *Landis* made clear that a movant seeking a stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id*.

In *Nken v. Holder*, 129 S. Ct. 1749, 1761 (U.S. 2009), the Supreme Court analyzed the traditional factors to be weighed for a stay pending an appeal which are instructive here:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

EduTrek cannot satisfy any of required elements for a stay. EduTrek cannot make a "strong showing" that through *Gomez* the Supreme Court is going to depart from its precedents regarding a Rule 23 plaintiff's standing to continue an action in spite of a purportedly completed Offer of Judgment being offered as to individual claims. In any event, the Seventh Circuit's instruction to the contrary is explicit in *Chapman* v. *First Index*. Similarly, the Seventh Circuit's decision in *Chapman v. Wagener Securities* rejects the *Spokeo* inspired argument that a TCPA Plaintiff has not suffered an injury.

Defendant also has failed to make out that clear case of hardship to Defendant. Plaintiff, by contrast, faces an unquestionable risk of harm as calling records needed to establish the number of violations and to identify class members have not been secured and will likely be disposed of while a stay is pending. Calling records have not been produced in this case, and EduTrek itself has indicated that the dialer who placed the calls is Axiom bpm, located in Ahmedabad, India. *See* attached email from Raymond Fitzgerald, dated October 20, 2015, attached as Exhibit 1. The need for the production of these and any other calling records is imperative to Plaintiff's putative class claims. Any further delay runs the risk of loss of evidence by Defendants' agents or common carriers, who may not be aware of the pendency of this litigation, or are unaware of their obligation to preserve information related to the telemarketing campaigns at issue.

Every day that passes increases the likelihood of routine destruction of this evidence. Attached as Exhibit 2 is a chart of national telecommunications providers and their respective call detail record retention policies compiled by the Department of Justice. In addition, electronic data is subject to data corruption through simple aging. *See* Exhibit 3, *Bitrot and*

*atomic COWs*, discussing threat of data loss,[1] and Exhibit 4, *Data Corruption* November 21, 2012, Scientific Computing.[2] Call detail records are one of the only meaningful ways potential class members can be identified in TCPA cases.[3] As detailed in the Department of Justice chart, many of the major telecommunications providers will only retain call record information for 12-18 months, and presumably smaller telecommunications providers keep this information for an even shorter period of time. *See also Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 414 (S.D. Tex. 2009) (noting, in the context of a full stay, "[a] long delay can lead to a loss of evidence—documents can be misplaced or destroyed and witnesses' memories can fade. In turn, a loss of evidence can frustrate Plaintiffs' abilities to put forth an effective case.")

---

[1] http://arstechnica.com/information-technology/2014/01/bitrot-and-atomic-cows-inside-next-gen-filesystems/ (last visited November 12, 2015).

[2] https://wiki.csiro.au/display/ASC/Data+Corruption (last visited November 12, 2015).

[3] Many cases have turned on the spoliation of telephone records that would permit a potential class plaintiff to identify additional class members. *See, e.g., Levitt v. Fax.com*, No. WMN-05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007) (denying class certification where "critical information regarding the identity of those who received the facsimile transmissions" was not available); *see also Pasco v. Protus IP Sol., Inc.*, 826 F. Supp. 2d 825, 831 (D. Md. 2011) (granting summary judgment where plaintiffs "[had] no transmission data on which to support their claims that Protus sent them the unsolicited faxes at issue."). A stay of this matter thus substantially increases the likelihood of prejudice resulting from the loss of evidence, including the ability of witnesses to recall specific facts, as well as the preservation of relevant documents. Specifically, the danger of losing evidence that relates to Defendants' calling campaign, which may be in the hands of a third party, increases with each passing day. This type of prejudice demonstrates the "fair possibility" that Plaintiff and the thousands of individuals and entities it seeks to represent would be harmed by the requested stay. *See Landis*, 299 U.S. at 255.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny CEC's motion to stay and/or dismiss.

RESPECTFULLY SUBMITTED AND DATED this 12th day of November, 2015.

    TERRELL MARSHALL LAW GROUP PLLC

    By:  /s/ *Beth E. Terrell, Admitted Pro Hac Vice*
        Beth E. Terrell, *Admitted Pro Hac Vice*
        Email: bterrell@terrellmarshall.com
        Mary B. Reiten, *Admitted Pro Hac Vice*
        Email: mreiten@terrellmarshall.com
        936 North 34th Street, Suite 300
        Seattle, Washington 98103-8869
        Telephone: (206) 816-6603
        Facsimile: (206) 350-3528

        Alexander H. Burke
        Email: aburke@burkelawllc.com
        Daniel J. Marovitch
        Email: dmarovitch
        BURKE LAW OFFICES, LLC
        155 North Michigan Avenue, Suite 9020
        Chicago, Illinois 60601
        Telephone: (312) 729-5288
        Facsimile: (312) 729-5289

        Edward A. Broderick
        Email: ted@broderick-law.com
        Anthony Paronich
        Email: anthony@broderick-law.com
        BRODERICK LAW, P.C.
        99 High St., Suite 304
        Boston, MA 02110
        Telephone: (617) 738-7080

>Matthew P. McCue
>Email: mmccue@massattorneys.net
>THE LAW OFFICE OF MATTHEW P. MCCUE
>1 South Avenue, Suite 3
>Natick, Massachusetts 01760
>Telephone:  (508) 655-1415
>Facsimile:  (508) 319-3077

*Attorneys for Plaintiff and the Proposed Class*

<u>CERTIFICATE OF SERVICE</u>

I, Beth E. Terrell, hereby certify that on November 12, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Terance A. Gonsalves
>Email: terance.gonsalves@kattenlaw.com
>Charles Allan Devore
>Email: charles.devore@kattenlaw.com
>Dawn Marie Canty
>Email: dawn.canty@kattenlaw.com
>KATTEN MUCHIN ROSENMAN LLP
>525 West Monroe Street
>Chicago, Illinois 60661-3693
>Telephone: (312) 902-5615
>Facsimile: (312)-902-1061
>
>Raymond Fitzgerald
>Email: rfitzgerald@bffmlaw.com
>Butler, Fitzgerald, Fiveson & McCarthy
>Nine East 45th Street
>Ninth Floor
>New York, New York 10017
>Telephone: 212-615-2200
>Facsimile: 212-615-2215

DATED this 12th day of November, 2015.

>TERRELL MARSHALL LAW GROUP PLLC
>
>By: /s/ Beth E. Terrell, *Admitted Pro Hac Vice*
>   Beth E. Terrell, *Admitted Pro Hac Vice*
>   Email: bterrell@terrellmarshall.com
>   936 North 34th Street, Suite 300
>   Seattle, Washington 98103-8869
>   Telephone: (206) 816-6603
>   Facsimile: (206) 319-5450
>
>*Attorneys for Plaintiff*