UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK FITZHENRY, individually and on behalf of all other similarly situated,<br><br>    Plaintiff,<br> v.<br><br>CAREER EDUCATION CORPORATION and EDUTREK, LLC.,<br><br>    Defendants. | Case No. 14-cv-10172<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mark Fitzhenry filed this action against Defendants Career Education Corporation ("CEC") and EduTrek, LLC ("EduTrek"), for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"). Defendant CEC has filed a Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") [67] for lack of standing and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and a Motion to Strike Class Allegations in Plaintiff's Second Amended Complaint [70]. Defendant EduTrek has filed a Motion to Stay the Proceedings [73] pending the decision of two Supreme Court cases, joined Defendant CEC's Motion to Dismiss Plaintiff's Second Amended Complaint [67], and joined Defendant CEC's Motion to Strike Class Allegations in Plaintiff's Second Amended Complaint [78]. For the reasons set forth below, Defendants' Motion to Dismiss [67] is denied, Defendant EduTrek's Motion to Stay is denied [73], and Defendants' Motions to Strike Class Allegations [70, 78] are denied.

**BACKGROUND**

The following is a summary of the material allegations in Plaintiff's SAC and are considered as true for purposes of deciding Defendants' Motions. CEC is a Delaware corporation with its principal place of business in Schaumburg, Illinois. (Dkt. 65 ¶ 3.) CEC owns and operates several for-profit institutions, including Colorado Technical University ("CTU"). EduTrek is a Utah limited liability corporation. (Dkt. 65 ¶ 4.) CEC entered into an agreement with EduTrek to obtain the names and telephone numbers of individuals CEC believes might enroll in its online courses. EduTrek generates these "leads" by placing telephone calls using automatic telephone dialing system ("ATDS") equipment and software. (Dkt. 65 ¶ 45.)

On September 17, 2014, Plaintiff received a call from an ATDS on his cell phone, marketing college education courses at a for-profit university. (Dkt. 65 ¶ 18.) When Plaintiff answered the phone, a person came on the line and stated that he was calling from Education Network on behalf of EduTrek and provided EduTrek's website address. (Dkt. 65 ¶ 20.) During this call, Plaintiff did not give his consent to receive autodialed calls. Plaintiff also alleges that the person on the line disclosed that he had called Plaintiff using an ATDS. At the end of the call, Plaintiff was transferred to EduTrek but the call disconnected as soon as the transfer took place. After the call disconnected, Plaintiff called EduTrek back. Again, Plaintiff alleges that he refused to give consent to receive texts or recorded messages, only live calls. (Dkt. 68-2.) That same day, Plaintiff alleges that he received an automatically dialed call from CTU. Plaintiff also alleges that

the person on the line disclosed that the call was made using an ATDS. (Dkt. 68 ¶ 28-32.)

Plaintiff asserts claims under the TCPA based on two telephone calls: one made by the Education Network (on behalf of EduTrek) and the other made by CTU (on behalf of CEC). Plaintiff alleges that CEC and EduTrek violated the TCPA by "making calls, except for emergency purposes, to the cellular phone of Plaintiff using an ATDS and/or artificial or prerecorded voice." (Dkt. 65 ¶ 76, 80.) Plaintiff further alleges that CEC should be held liable for the call he received from Education Network based on a "sub-agency" theory and that CEC should be held vicariously liable for the call he received from CTU.

Defendants argue that Plaintiff lacks standing because neither call is fairly traceable to CEC. Defendants further argue that Plaintiff consented to one of the phone calls, which undermines his TCPA claim. Next, Defendants claim that a proposed complete settlement offer from CEC and CTU warrants dismissal. Lastly, Defendants argue that Plaintiff fails to state a claim upon which relief can be granted because CEC is not liable for the actions of Education Network and/or CTU.

## LEGAL STANDARD

In order to properly state a claim, the plaintiff must present "a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief sought." Fed. R. Civ. P. 8. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, 555 (2007)). For purposes of a motion to dismiss under Rule 12(b)(1) or Rule 12(b)(6), all well-pleaded factual allegations are accepted as true and all reasonable inferences are construed in the plaintiff's favor. *See, e.g., Scanlan v. Eisenberg,* 669 F.3d 838, 841 (7th Cir. 2012); *Tamayo v Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008). Although a court is to accept all allegations contained in a complaint as true, this principle does not extend to legal conclusions. *Iqbal,* 129 S. Ct. at 1949.

A Rule 12(b)(1) motion challenges federal jurisdiction. *Scanlan,* 669 F.3d at 841-42. When ruling on a 12(b)(1) motion, courts may look outside the complaint's allegations and consider whatever evidence has been submitted on the issue of jurisdiction. *Ezekial v. Michel,* 66 F.3d 894, 897 (7th Cir. 1995). The plaintiff bears the burden of establishing the elements necessary for jurisdiction, including standing. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561(1992). "The question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues." *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 444 (7th Cir. 2009) (quoting *Warth v. Seldin,* 422 U.S. 490, 498 (1975)).

In order to withstand a 12(b)(6) motion, a plaintiff must plead sufficient factual matter to state a claim for relief that is "plausible on its face." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 570). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 679. The complaint must provide a defendant "with 'fair notice' of the claim and its basis."

*Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly,* 550 U.S. at 555 (2007).

## ANALYSIS

*Defendants' Motion to Dismiss Under Rule 12(b)(1)*

Defendants argue that dismissal is appropriate pursuant to Rule 12(b)(1) because: (1) Plaintiff lacks standing to bring this lawsuit as he has not and cannot establish the alleged harm is fairly traceable to CEC; and (2) Plaintiff consented to receive one of the calls upon which he bases his TCPA claim.

Standing exists where a plaintiff can show: (1) a concrete and particularized injury that is actual or imminent; (2) a causal connection between the injury and the defendant's action; and (3) a likelihood that the injury can be redressed if the court finds in the plaintiff's favor. *Lujan*, 504 U.S. at 560-61. "All that a plaintiff need show to establish standing to sue is a reasonable probability . . . of suffering tangible harm unless he obtains the relief that he is seeking in the suit." *Hoover v. Wagner*, 47 F.3d 845, 847 (7th Cir. 2000).

Under the TCPA, it is unlawful "to make any call, other than for emergency purposes or with the express consent of the called party, using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The Federal Communication Commission's ("FCC") regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*

*Memorandum and Order,* 10 F.C.C.R. 12391, 12397 ¶ 13 (1995). In order to be held vicariously liable under the TCPA, the Plaintiff must plead that a seller's goods or services are being advertised by a third-party telemarketer. *In re the Joint Petition Filed by Dish Network, LLC et al.*, 28 FCC Rcd. 6574, ¶ 1, 33-47 (2013) ("A seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers.").

Defendants argue that Plaintiff has not adequately pled facts to hold CEC liable for the CTU call or the Education Network call. However, Plaintiff's SAC pleads several factual allegations that connect CEC to both the CTU and Education Network calls. First, Plaintiff claims that he received a telemarketing call on his cellular phone from an employee who purported to be calling on behalf of EduTrek. (Dkt. 65 ¶ 18, 20.) This employee also informed Plaintiff that the call was made using an automatic dialing system. (Dkt. 65 ¶ 19.) On that same day, Plaintiff claims he received a call from an employee of CTU also using an automatic dialing system. (Dkt. 65 ¶ 28, 32.)

Plaintiff alleges several facts that imply a connection between CEC and CTU. First, CEC holds itself out as the employer of faculty and staff hired to work at CTU and its other institutions, including a position of the admissions and marketing departments. (Dkt. 65 ¶ 38.) On the Career Education Corporation website under the heading "Working at Career Education," the job listings include a position as "Admissions Advisor – CTU Colorado Springs." *Id.* Plaintiff asserts that he called CEC to complain about the telemarketing phone calls and was told by a CEC representative that no one else from CTU would call him, and he would be placed on CEC's do-not-call list. (Dkt.

65 ¶ 42.) When construed in a light most favorable to the Plaintiff, the SAC asserts factual allegations that connect both telephone calls to CEC.

Defendants also argue that Plaintiff consented to receive the CTU call. Plaintiff did consent to receiving a live call. However, the TCPA does not just forbid the use of artificial or prerecorded calls, but also the use of an automated dialing system. Plaintiff may have consented to be called live, but he did not consent to calls made by an ATDS. Thus, the Complaint sufficiently pleads facts that support his claim of violations of the TCPA. Specifically, Plaintiff alleges that CTU and Education Network used an automated dialing system, on behalf of CEC, to contact Plaintiff.

*Defendants' Motion to Dismiss Under Rule 12(b)(6)*

Defendants argue that dismissal is appropriate pursuant to Rule 12(b)(6) because Plaintiff failed to assert any factual allegations upon which relief can be granted. Defendants further contend that Plaintiff has not adequately pled facts that show Education Network is CEC's subagent, or that CEC controlled, authorized, or was aware of Education Network's conduct. However, as noted above, the factual allegations in Plaintiff's SAC give Defendants fair notice of the claim against them. The allegations and the reasonable inferences drawn from the allegations, when interpreted in a light most favorable to Plaintiff, satisfy the requirements of Rules 12(b)(1) and 12(b)(6). Plaintiff has pled sufficient factual allegations that satisfy standing and provide a reasonable basis upon which relief can be granted.

*Defendants' Settlement Offer*

As a preliminary matter, EduTrek filed a Motion to Stay the Proceedings [73] pending Supreme Court decisions in *Campbell-Ewald Company v. Gomez*, Docket No. 14-857, and *Spokeo, Inc. v. Thomas Robins*, Docket No. 13-1339. Since the filing of the Motion to Stay, the Supreme Court ruled on *Campbell-Ewald Company v. Gomez*, and EduTrek withdrew its specific arguments regarding that case. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), *as revised* (Feb. 9, 2016) (*Campbell-Ewald*). *Campbell-Ewald* involves the same issues raised by EduTrek in its Motion to Dismiss based on an offer of settlement.

Defendants argue that CEC and CTU offered a complete settlement on February 17, 2015 that warrants dismissal of this suit. The offer on behalf of CEC and CTU included the injunctive relief sought by Plaintiff and an offer of $3,000 for two relevant phone calls cited in the SAC. However, Plaintiff claims that the settlement offer is incomplete and does not account for a third phone call, asserted for the very first time in Plaintiff's response. (Resp. at 2.)

Defendants argue that the settlement offer remains open. The SAC asks for: (1) injunctive relief prohibiting such violations of the TCPA by the Defendants in the future; $1,500 for each and every call that violated the TCPA (statutory willful and knowing violations); $500 for each and every call that violated the TCPA; attorneys' fees (statutory); class action certification; and other relief deemed proper. (Dkt. 65 ¶ A-F.) A plaintiff who sufficiently pleads facts in violation of the TCPA is entitled to a maximum

of $1,500 per call (for statutory damages showing willful or knowing violation of automated-call requirements). 47 U.S.C. § 227(b)(3).

The parties offer contrary interpretations of the Seventh Circuit holding in *Chapman v. First Index, Inc.,* 796 F.3d 783 (7th Cir. 2015). However, as noted above, since the parties filed their briefs, the Supreme Court resolved this issue in *Campbell-Ewald.* An unaccepted settlement offer or offer of judgment does not moot a would-be class representative plaintiff's case and that plaintiff must be afforded a fair opportunity to show that class certification is warranted. *Campbell-Ewald,* 136 S. Ct. at 11. This includes an unaccepted settlement offer under Federal Rule of Civil Procedure 68. *Campbell-Ewald,* 136 S. Ct. at 9. An offer of judgment under Rule 68 "is considered withdrawn" if not accepted within 14 days of its service. Fed. R. Civ. P. 68. Here, a settlement offer that may satisfy Plaintiff's individual demands does not moot his case. Therefore, Defendants' Motion to Dismiss is denied.

*Defendant EduTrek's Motion to Stay*

As stated above, EduTrek filed a Motion to Stay proceedings in this case pending the Supreme Court's decision in *Spokeo*. In deciding whether to grant a Motion to Stay, the court should consider: (i) whether the stay will unduly prejudice the non-moving party; (ii) whether the stay will simplify the issues; and (iii) whether the stay will reduce the burden of litigation on the parties and on the Court. *Tap Pharm. Products, Inc. v. Atrix Labs., Inc.*, No. 03 C 7822, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004).

EduTrek notes that the issue before the Supreme Court in *Spokeo* is whether Congress may confer Article III standing on a plaintiff who suffers no concrete harm and

9

who otherwise could not invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute. However, as noted by Plaintiff, *Spokeo* involves a claim under the Fair Credit Report Act ("FCRA"), 15 U.S.C. 1681 *et seq*. The Ninth Circuit held that a statutory cause of action under the FCRA does not require a showing of actual harm when a plaintiff sues for willful violations. *Robins v. Spokeo, Inc.*, 742 F.3d 409, 410 (9th Cir. 2014). First, the operative statute here is the TCPA, not the FCRA; therefore, a decision in *Spokeo* is obviously not binding. Second, EduTrek's argument is premised on the presumption that TCPA violations present no concrete injuries to those who receive unwanted telemarketing communications. EduTrek provides no authority for this assertion. EduTrek has not sufficiently shown that a stay would be appropriate in this case, and its Motion to Stay is denied.

*Defendants' Motions to Strike Class Allegations*

Motions to strike class allegations are evaluated under Federal Rule of Civil Procedure 23. *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014). Under Rule 23(c)(1)(A), "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). This can be determined at the pleading stage when the complaint makes it clear that class certification is inappropriate. *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013). "[W]here the dispute is factual and discovery is needed to determine whether a class should be certified, it may be premature to strike class allegations." *Wright v. Family Dollar, Inc.*,

No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010). However, "[i]f the plaintiff's class allegations are facially and inherently deficient, for example, 'a motion to strike class allegations . . . can be an appropriate device to determine whether [the] case will proceed as a class action.'" *Buonomo*, 301 F.R.D. at 295. (quoting *Bohn v. Boiron, Inc.*, No. 11 C 08704, 2013 WL 3975126, at *5 (N.D. Ill. Aug. 1, 2013)).

To obtain class certification, Plaintiff must demonstrate that the proposed class satisfies all four elements of Federal Rule of Civil Procedure 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23. If Rule 23(a) is satisfied, the proposed class must also satisfy at least one of three provisions under Rule 23(b). *See Harper v. Sheriff of Cook County,* 581 F.3d 511, 513 (7th Cir. 2009). Under Rule 23(b):

> "A class action may be maintained if Rule 23(a) is satisfied and if:
>
> (1) prosecuting separate actions by or against individual class members would create a risk of:
>     (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>     (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b).

Defendants move to strike Plaintiff's class claims, arguing that individualized issues predominate over common issues, that Plaintiff is not an adequate class representative and is not a member of the putative class, and that this action is not appropriate for certification under Rule 23(b)(2) due to the potential availability of monetary damages.

A telephone call recipient who has expressly consented to receive the call about which he complains has no actionable claim under the TCPA. 47 U.S.C. 227(b)(1)(A). Defendants argue that determining whether each putative class member provided consent to be called by or on behalf of CEC would require an individualized inquiry. Defendants further argue that the proposed class definition would require individualized inquiries to determine whether each telephone number dialed was assigned to a cellular telephone at the time of the call. Both of these arguments are unpersuasive. Defendants' unsupported speculation that some of the proposed class members may have consented to receive calls or that some telephone numbers dialed were not assigned to class members' cellular telephone numbers, does not preclude class certification at the pleading stage. Further, as noted by Plaintiff, consent by a putative class member is an affirmative defense that Defendants must plead and prove.

Defendants also argue that there is "individuality inherent" in a call with a live representative because the purpose of each call could be different and the purpose of the call creates a distinction between the different requirements for consent. Again, this is an unsupported speculation based on the assumption that some of the proposed class members may have consented to receive calls.

Defendants next argue that Plaintiff is not an adequate class representative pursuant to Rule 23(a)(4). Defendants allege in their Motion to Strike that Plaintiff is a "professional TCPA plaintiff" who sought to increase the volume of telemarketing calls he receives in order to increase his revenue from his TCPA lawsuits, and that this subjects him to particular defenses not applicable to other putative class members. In particular, Defendants note that Plaintiff is subject to a defense of consent and attacks regarding his overall credibility as a witness and class representative because he consented to a live call from CTU and feigned interest in educational programs in order to receive these calls. Defendants provide no legal support for this argument regarding Plaintiff's credibility. Moreover, prior to discovery, a challenge to the adequacy of the class representative is inappropriate at the pleadings stage. Defendants' argument that Plaintiff is not a member of the putative class similarly fails. Defendants reiterate their arguments that Plaintiff did not properly allege that he received calls from CEC or EduTrek. As noted above, Plaintiff's Complaint sufficiently alleges that the calls at issue were made on behalf of Defendants, and thus that Plaintiff is a member of the putative class.

Finally, Defendants argue that Plaintiff cannot properly assert class claims pursuant to Rule 23(b)(2). Rule 23(b)(2) permits class certification if Rule 23(a) is satisfied and if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "When the main relief sought is injunctive or declaratory, and the damages are only 'incidental,'

the suit can be maintained under Rule 23(b)(2)." *In re Allstate Ins. Co.*, 400 F.3d 505, 507 (7th Cir. 2005). Defendants contend that each potential plaintiff is entitled to statutory damages for each violation of the TCPA and are not "incidental" thus, the proposed class cannot be certified under Rule 23(b)(2). However, at this stage in the proceedings, whether Defendants' damages are "incidental" is again, an assumption that is difficult to make without the benefit of discovery or further litigation. To strike Plaintiff's class claims because of a speculative assertion regarding each class member's possible entitlement to damages would be premature. Thus, Defendants' Motions to Strike Class Allegations are denied.

## CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss [67] is denied, Defendant EduTrek's Motion to Stay is denied [73], and Defendants' Motions to Strike Class Allegations [70, 78] are denied.

Date:    March 1, 2016

JOHN W. DARRAH
United States District Court Judge